## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CYNTHIA PHILLIPS,**

      **Plaintiff,**

**vs.**                              **Case No.: 8:05-cv-1327-T-30MSS**

**AMERICAN AIRLINES, INC.,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** comes on for consideration of Defendant's Motion for Summary Judgment (Dkt. 43) (the "Motion"),[1] Plaintiff's response to Defendant's Motion (Dkt. 14) and Defendant's reply to Plaintiff's response (Dkt. 23).[2] On January 30, 2006, the Undersigned held a hearing on the Motion and the parties presented oral argument in support of their positions.

## I.   BACKGROUND

Plaintiff comes before the Court on a third attempt to have the Court order Defendant to grant some form of relief to her in connection with losses she claims

---

[1]On March 3, 2006, the Court ordered that Defendant's Motion to Dismiss be re-filed as a Motion for Summary Judgment (Dkt. 42).

[2]This matter has been referred to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72, and Local Rules 6.01(a),(b) and 6.02(a), M.D. Fla. (Dkt. 33).

to have sustained in connection with a hard landing of an American Airlines plane on which Plaintiff was traveling as a passenger and not an employee.[3]  On Plaintiff's first presentation of this case to the Court, the parties settled their claim.  The terms of their settlement were orally presented to the parties and assented to by each.  The details are set forth in this Court's Order of March 29, 2005 (the "March 2005 Order").  (Dkt. 43, Ex. C)

Plaintiff next returned to the Court with "buyer's remorse" asking the Court to reopen the case and permit her to refile her claim and assert a plethora of other claims disputing the settlement, which had by that time been consummated and the proceeds consumed by Plaintiff.  This effort was rejected by the Court in its March 2005 Order, as the Court found the suit was fully and finally resolved by settlement.  (Dkt. 43, Ex. C)  The matter was dismissed with prejudice and the case closed.[4]  No appeal from that Order was taken by Plaintiff.

Now Plaintiff returns; this time she concedes she has no right to claim personal injury damages or related economic damages arising out of her claimed injury as those claims have been fully and finally resolved.  In her new complaint, initially filed in state court, Plaintiff alleges a breach of the settlement agreement in the federal litigation.  Specifically, Plaintiff alleges that in the settlement agreement

---

[3]Plaintiff was a passenger flying to meet the plane on which she would serve as a flight attendant.  (Dkt.  36, Ex.  F)

[4]See Phillips v. American Airlines, 8:01-cv-1819-MSS (M.D. Fla. September 21, 2001), *available at* http://ecf.flmd.circ11.dcn

she preserved her right to make a claim against Defendant for "additional lost wages" and American Airlines has refused to "respond" to her claim for additional lost wages related to the injuries sustained in the accident.  (Dkt. 2)

In its Motion (Dkt. 43), Defendant concedes that Plaintiff preserved a right in the settlement agreement.  However, Defendant asserts that the right preserved by Plaintiff was the right to claim that her sick leave or absences taken after January 2000 should not be treated as sick leave or an occurrence under the collective bargaining agreement ("CBA").  Defendant further concedes that if Plaintiff asserted such a claim the settlement agreement was "not specific in that circumstance."  (Tr. at 16)  That is, it did not specify what her remedy would be.  Defendant's contention is that the company preserved the right to reject or accept her claim.  If the company denied the asserted claim, Defendant contends that Plaintiff had no further recourse and the matter would simply be "over and done with."  (Tr. at 16)  Defendant also contends Plaintiff's claim is barred under the doctrines of *res judicata* or collateral estoppel as the parties have previously litigated the issues raised by Plaintiff in the instant action.  As such, Defendant asks the Court to grant judgment in its favor as a matter of law.

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c));  Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case as to which the nonmoving party has the burden of proof."  Cornelius v. Town of Highland Lake, 880 F.2d 348, 351 (11th Cir. 1989).  Mere allegations of denial are insufficient to meet the burden of opposing summary judgment, and the party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and, therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor.  See id. at 248.

Finally, the relevant rules of substantive law dictate the materiality of a disputed fact.  Thus, the decision of summary judgment in this case must be made with reference to the standard of proof applicable to the claims on which the motion is brought.  See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1527-1528 (11th Cir. 1987).

## III.   DISCUSSION

The instant motion is brought on assertion of *res judicata* as a bar to Plaintiff's action.  Under the doctrine of *res judicata*, or "claim preclusion," "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action."[5]  San Remo Hotel, L.P. v. City and County of San Francisco, California, 125 S.Ct. 2491, 2500 n.16 (2005).  A dismissal with prejudice entered pursuant to a settlement agreement constitutes a final judgment on the merits.  See Norfolk Southern Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1289 (11th Cir. 2004) (stating that a settlement is "as conclusive as a judgment would have been if the claim had been litigated rather than . . . settled").  When the final judgment is due to settlement, the scope of the *res judicata* effect is determined by the terms of the settlement agreement.  Id.  As the Eleventh Circuit stated in Norfolk Southern, "the best evidence of the [parties'] intent [with respect to the terms of the agreement] is . . . the settlement agreement itself."  Id.

Further, a motion to reopen a case results in a final judgment for purposes of *res judicata*.  See Kansas City S. Ry. Co. v. Canadian Nat'l/Ill. Cent. R.R., 2005 WL 2012356, slip op. *at 3-4 (5th Cir. August 23, 2005).  In that case, Kansas City Southern Railway ("KCS") moved to reopen a previously settled case in an attempt

----

[5]"There are four elements to claim preclusion: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of parties; and (4) identity of causes of action."  Twigg v. Sears, Roebuck & Co., 153 F.3d 1222, 1225 (11th Cir. 1998).

to get Canadian National/Illinois Central Railroad ("CN/IC") to reimburse KCS for its contribution to a settlement fund.  Id. at *2.  The district court denied the motion holding that it did not have jurisdiction over KCS' claims because the Joint Facilities Agreement ("JFA") governing the parties relationship required all issues to be arbitrated.  Id.  After the court denied KCS' motion to reopen, KCS filed a complaint again seeking reimbursement for its settlement contribution.  Id.  The district court dismissed that action finding that it was precluded by *res judicata*.  Id.

On appeal, the Fifth Circuit affirmed the district court's dismissal.  Id. at *4. The appellate court found the denial of the motion to reopen to be "a final determination of the court's subject matter jurisdiction for th[e] claim; rendered by a court of competent jurisdiction; involving the same parties and the same claim. . . ." Id. at *3-4.  Further, KCS did not appeal the district court's dismissal.  Id. at *4.  As such, *res judicata* barred KCS' later action.  Id.

Here, the parties mediated the issues before the Court and reached an oral settlement.  At the close of mediation, the parties orally agreed to dismiss the claim *with prejudice* upon consummation of the settlement agreement.  Despite the fact that the agreement was oral, the parties entered into a valid settlement agreement. (See Dkt. 43, Ex. C)  That agreement was consummated when Plaintiff "fully participated in Court mediation, . . . assented to the terms agreed to by the parties orally at mediation, in writing after mediation and . . . accept[ed] and exhaust[ed] . . . settlement funds."  (Dkt. 43, Ex. C at 12)  The terms of the settlement were

outlined in the transcript of the mediation proceedings.  The parties orally agreed that: (1) all sick days between November 24, 1999 and January 1, 2000 would not be treated as sick leave and therefore deemed to count towards Plaintiff's accrued sick time, and (2) notwithstanding the terms of release Plaintiff expressly preserved her *right to claim* that no other sick leave or absences taken should be treated as sick leave or an occurrence.

After the mediation, the parties were ordered to file a stipulation of dismissal with the Court and advised that their matter would be dismissed and the case closed by the clerk.  The parties failed to file said stipulation and the clerk subsequently closed the case in May 2003 (the "first litigation").  This dismissal by the Court pursuant to the settlement agreement was a final judgment on the merits of the case.  See Norfolk Southern, 371 F.3d at 1289.  The parties were therefore prevented from raising any claims arising out of or related to these matters in the future.

Following the settlement in 2003, Plaintiff met with a base manager for Defendant at least one time[6] to assert her claim regarding her sick leave.  (Pl. Dep. at 59)  The base manager informed Plaintiff that she had "nothing else left to claim." (Pl. Dep. at 110)  After this denial, Plaintiff filed at least two Notices of Dispute and appeared before the Board of Adjustment (the "Board") in July 2004.  (Pl. Dep. at

---

[6]In her deposition, Plaintiff states that she met with the base manager "maybe two, [or] three" times (Pl. Dep. at 59), but is certain that "there was at least one" meeting (Pl. Dep. at 108) between the two of them.

117, 122) The decision of the Board is discussed in detail below.

One month after appearing before the Board and disputing the finality of the prior proceedings, Plaintiff sought to reopen the federal case, alleging that (1) Defendant had failed to incorporate in the settlement agreement contents of Plaintiff's personnel file and (2) Defendant had breached the settlement agreement by refusing to honor the portion of the agreement which preserved Plaintiff's right to make her claim regarding sick leave.   As relief, Plaintiff requested:

> that the [C]ourt reopen the matter in order to clarify to the defendant that the "earlier agreement" in the plaintiff's personnel file is part of the mediation agreement of July 31, 2002, and award appropriate sanctions, if the [C]ourt deems appropriate, including costs and attorney fees, and interest on all accrued, but unpaid[,] employment benefits that have been lost since January 2000.

Phillips v. American Airlines, 8:01-cv-1819-MSS, Dkt. 52 (M.D. Fla. November 16, 2004).

The Court received memoranda from the parties and conducted an evidentiary hearing on Plaintiff's request to reopen the case.  Thereafter, the Court reaffirmed the parties' settlement and again dismissed the case with prejudice.  (Dkt. 43, Ex. C)  This decision by the Court was not appealed (the "second litigation") and thus, resulted in a final judgment.  See Kansas City S. Ry. Co., 2005 WL 2012356, slip op. at *3-4.  The parties were again prevented from raising any claims arising out of or related to these matters in the future.

Now, Plaintiff has filed a complaint in state court stating she preserved her

right in the first litigation to claim "additional lost wages in the future if related to the injury received in the . . . airline accident." (Dkt. 2)  Plaintiff states that "pursuant to the terms of the mediation agreement . . . [Plaintiff has] made claim[s] for additional wage loss and [Defendant] has refused to respond to [her] demands." (Dkt. 2)  By failing to respond, Plaintiff alleges Defendant has breached the settlement agreement.  Aside from Plaintiff misstating the terms of the parties' settlement in that Plaintiff never preserved her right to claim additional lost wages, Plaintiff's complaint raises issues identical to those raised in the second litigation.

In the second litigation, Plaintiff alleged Defendant breached the settlement agreement for failing to honor her preserved right.  As noted, *res judicata* bars "the parties . . . from relitigating issues that were or *could have been* raised in that action." San Remo Hotel, L.P., 125 S.Ct. at 2500 n.16 (emphasis added).  Here, Plaintiff's assertion is that Defendant has "refused to respond" to Plaintiff's claims, thus breaching the settlement agreement. (Dkt. 2)  Viewing the evidence in the light most favorable to Plaintiff, nothing in the record indicates that Plaintiff has asserted claims to Defendant regarding her sick leave since her meeting with the base manager in 2003 and her appearance before the Board in July 2004.  By Plaintiff's own admission in her deposition testimony, Defendant's "refusal to respond" to Plaintiff's claims occurred in 2003, or at the latest July 2004, prior to the commencement of the second litigation in August 2004.  As such, Plaintiff was aware of factors which would have given rise to this current asserted breach of

contract claim.  Its underlying facts were known to Plaintiff prior to the filing of the second litigation, and Plaintiff could have asserted such a claim of breach on that basis at that time.  Thus, Plaintiff's present claim, which was filed in state court and transferred to this Court in July 2005, is barred by *res judicata*.  Because *res judicata* precludes Plaintiff from bringing the present action, the Court need not address issue preclusion under the doctrine of collateral estoppel.

Whether Plaintiff retains the right to the requested relief under the CBA and its related procedures is not resolved by this Order.   The parties' settlement provided, in pertinent part that:

> all sick days between November 24, 1999 and January 1, 2000 will not be treated as sick leave and therefore deemed to count towards the Plaintiff's accrued sick time. . . . The parties further agree that notwithstanding the terms of release the *plaintiff expressly preserves her right to claim that no other sick leave or absences that she has taken should be treated as sick leave or an occurrence.*

(Dkt. 43, Ex. C at 4-5) (*emphasis added*)

Thus, Plaintiff preserved the right to claim that sick leave and absences taken after January 2000 should not be treated as sick leave or an occurrence.  The only possible remaining source of such a claim is the CBA.  Disputes arising under the CBA are reviewable by the Board of Adjustment.  (Dkt. 14 at 7); See Whitaker v. American Airlines, 285 F.3d 940, 945 (11th Cir. 2002)(stating that disputes related to the meaning or proper application of a particular provision of a collective bargaining agreement are within the jurisdiction of the Board of Adjustment).

Plaintiff exercised her right to make that claim when she argued the matter before the Board in July 2004. (Dkt. 14)  In its ruling, the Board stated it would not exercise jurisdiction over any matters between the parties which were resolved in the settlement agreement.  The Board noted at the time of its decision there remained uncertainty regarding the scope of the parties' settlement. (Dkt. 14) Specifically, the Board noted "there may be collective bargaining matters regarding [Plaintiff's] attendance record that [were] not addressed in any settlement agreement which would fall under the Board's jurisdiction." (Dkt. 14 at 7)

The Board then instructed the parties to list for it those items that were resolved in their settlement agreement and those items which were still unresolved and could be decided by the Board pursuant to the parties' CBA.  The Court has not been advised whether such a list was ever created.  Upon resolution of all issues regarding settlement of the litigation, the Board agreed that, to the extent she had further rights and claims under the CBA, Plaintiff would be permitted to pursue with the Board those claims which remained unresolved.  The only claim that was not resolved by the initial settlement agreement was Plaintiff's request that her post-January 2000 absences and sick leave not be treated as sick leave or an occurrence under the CBA.

If the Board determines it has not reached a decision on the merits of Plaintiff's appeal of the company's denial of such relief, Plaintiff might be able to return to the Board for a decision on the merits of that appeal.  Significantly,

-11-

however, a review of Plaintiff's claim reveals that Plaintiff was flying from Tampa to meet a plane in Miami on which she was to be assigned as a flight attendant. (Dkt. 36, Ex. F)  She was not engaged as an employee on the Tampa plane on which she was commuting to work at the time of the incident giving rise to her claimed injury. Thus, it is unclear what the basis for Plaintiff's proceeding under the CBA would be. Furthermore, it is unclear whether the opportunity to proceed under the CBA still exists as the Court has not been advised of any temporal or other limitation or prerequisite for pursuing her claimed relief.  However, Plaintiff offers no evidence that Defendant has in any way prevented her from pursuing an administrative appeal to the Board of Adjustment.

## IV.    CONCLUSION

In light of the foregoing, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment (Dkt. 43) and **DISMISS** this case with prejudice.

Respectfully **RECOMMENDED** in Tampa, Florida on this 26th day of May 2006.

MARY S. SCRIVEN
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).


Copies furnished to:

Presiding District Court Judge
Counsel of Record
Unrepresented Parties